GARY M. RESTAINO
United States Attorney
District of Arizona
D. MATTHEW CONTI
Arizona State Bar No. 021719
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone:  602-514-7500
Email: David.Conti@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-23-00408-001-PHX-GMS |
|---|---|
| Plaintiff, | |
| vs. | **UNITED STATES' SENTENCING MEMORANDUM** |
| Cynthia Solano, | |
| Defendant. | |

The United States of America submits this memorandum in support of sentencing in this case. The United States requests that the court accept the plea agreement and sentence the Defendant to 87 months in the Bureau of Prisons and three years of supervised release.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    FACTS

In May 2022, Canadian law enforcement officers working with the Toronto Police Service ("TPS") executed search warrants at multiple locations in the Toronto, Ontario metropolitan area as part of an investigation into firearms trafficking.  TPS searched multiple locations and recovered 62 firearms.  At one of the search locations, TPS found eight semi-automatic rifles and 51 handguns.

TPS provided serial numbers associated with the firearms to the Bureau of Alcohol,

Tobacco, Firearms and Explosives ("ATF").    ATF traced the serial numbers associated with the 62 firearms and learned that 59 of them were last known to be purchased by people in Arizona.[1]    ATF's firearm tracing also provides the number of days which had passed between the date the firearms were recovered (May 28, 2022) and the date the firearms were purchased.  This time is commonly referred to as the "time to crime."    Based on a more recent review, the time to crime of the firearms recovered by TPS ranged between twelve to 5,000 days.

ATF investigators subsequently began interviewing some of the individuals who purchased the firearms in Arizona.  All of those interviewed admitted that they had sold their firearms (as opposed to having been stolen).  But through those interviews and additional investigative efforts, ATF identified the Defendant, Cynthia Solano, as someone who may have been involved in the trafficking of those firearms.

**Defendant's Arrest**

On January 3, 2023, Illinois State Police ("ISP") Trooper B. Heaton observed a blue Chevrolet Tahoe SUV with a temporary registration driving on the highway with an obstructed front windshield near Springfield, Illinois.  The Tahoe pulled over to the side of the road before Trooper Heaton got behind it.  Then he pulled behind the stopped Tahoe and saw that the temporary tag was unreadable.

The Defendant got out of the Tahoe before the Trooper approached and walked around the car as if she was checking the tires. Trooper Heaton approached and saw Defendant's son in the car. Defendant gave Trooper Heaton her Arizona driver's license and told him that she was the registered owner. He asked her where she was traveling.  She

---

[1] ATF reviews ATF Form 4473 – Firearms Transaction Record, which is filled in by the Federal Firearms Licensee and signed by the firearm purchase on the date of sale. Form 4473 includes the make, model, and serial number of the firearm as well as the purchaser's name, biographical information, and residential address.

first stated Chicago and corrected herself and said Detroit. The Defendant said she has to go through Chicago to get to Detroit. During the encounter, she appeared extremely nervous to Trooper Heaton. He observed her breathing was labored and her carotid artery appeared to be pulsing through her neck very fast.

Trooper Heaton asked the Defendant if there was anything illegal in the vehicle, and she stated no. ISP Sgt. Canine Handler S. Ent arrived on scene and had his dog sniff the Tahoe. The dog alerted so Trooper Heaton explained to the Defendant that they were going to search the vehicle. The Defendant told the officers that all the bags and suitcases in the vehicle were hers. The trunk was searched, and the officers found five suitcases packed with small packages wrapped in Christmas wrapping paper. The officers opened the packages and found 87 pistols. Two of the guns were previously reported stolen, a Kimber, K6S, .357 and Glock, 43, .9mm. Additionally, a Glock .45 cal. pistol had an auto-switch, which allows a pistol to fire automatically without successively pulling the trigger.

ISP Troopers took custody of all firearms. The Defendant said that she didn't know there was luggage located in her vehicle and denied knowing about the guns. Trooper Heaton also found two cellular phones and an Apple tablet in the vehicle. The Defendant admitted the grey iPhone with a flowery case was hers. The other phone was her son's.

ISP interviewed the Defendant and her son and recorded the interviews. During her first interview, she said that "they" loaded the suitcases into her car. She vigorously denied knowing what was in the suitcases. At one point during the recording, the officer's walked away and she spoke with her son. When she spoke with him, she told him not to talk to the police and to tell them that they are going to Chicago to see "the Bean."

During her second interview, the Defendant began by continuing to deny knowing that there were firearms in her vehicle. She also denied knowing what a "switch" or "Glock switch" was. After approximately 1:50:00 into the interview and after they told her she was going to jail, she said that "they" threatened her to do it and told her that they could track her car.

ISP submitted the firearms for fingerprint analysis. Defendant's prints were not recovered.

**The Defendant's Phones**

ISP Troopers subsequently obtained a search warrant from the State of Illinois for the two phones and tablet. However, the ISP Troopers were unable to access the contents because the biometric access security feature on the Defendant's phone was enabled. Subsequently, United States District Court for the Central District of Illinois Magistrate Judge Karen McKaught authorized the search, seizure of the grey iPhone with a flowery case on January 13, 2023. This warrant included authority to bypass the biometric access security feature by placing the phone in front of Solano's face or applying the Defendant's finger. The Defendant later volunteered the access codes for all the devices to the personnel at the Sangamon County Jail after learning of the warrants through her attorney.

The search of Solano's phone provided some evidence of her activities before her arrest on January 3, 2023. Of particular interest were text communications between Solano and her friend between December 29, 2022 and January 3, 2023.

**December 29, 2022** –

| | |
|---|---|
| Defendant's Friend: | When are you leaving? |
| Defendant: | I don't know |
| Defendant: | sending u my money today. Ill need it for my trip. So il let u know when its ready. |
| Defendant's Friend: | Ok, sounds good! |
| Defendant's Friend: | Just went to try to pick up the money order they closed at 8. Will go back in the morning. |

**December 30, 2022** –

| | |
|---|---|
| Defendant's Friend: | Hey good Morning sorry fell asleep last night. Headed to Walmart now. |
| Defendant: | Thank u do you have any wrapping paper and tape or you can give me I need it if not, I'll run to the store real |

- 4 -

| | | |
|---|---|---|
| 1 | | quick and get some.[2] |
| 2 | Defendant's Friend: | I have extra I'll bring some |
| 3 | Defendant's Friend: | Ur first message cut out but it sounds like you didn't |
| 4 | | leave yet |
| 5 | Defendant: | I'll leave tomorrow I had to deal with a money thing. |
| 6 | | [. . .] |
| 7 | Defendant: | This is what I told these [f…ers] to do this since last |
| 8 | | [f…ing] week and now we're having all these issues and |
| 9 | | I already lost the whole day. |
| 10 | Defendant's Friend: | U still don't got the money |
| 11 | Defendant: | wait until abeam finds out. He will be super [f…ing] |
| 12 | | [p…ed] because we already programmed everybody for |
| 13 | | a particular day and now we're gonna have to cancel |
| 14 | | because I'm not gonna make it in three days. It's a |
| 15 | | holiday. I'm not trying to speed because there's cops |
| 16 | | everywhere." |
| 17 | Defendant's Friend: | hes gonna freak the [f…] out. |
| 18 | Defendant: | I honestly don't even wanna answer the call when it |
| 19 | | comes in because I've been telling these guys to get on |
| 20 | | this since last [f…ing] week and I lied to him yesterday |
| 21 | | and told him that I had left but I'm just gonna tell him I |
| 22 | | had to come back, cause some issues with the money |
| 23 | | but he's gonna be [p..ed]. |
| 24 | Defendant's Friend: | it is not your fault they [f…ed] up. |

---

[2] As noted above, the firearms recovered by ISP were wrapped like Christmas presents.

| | | |
|---|---|---|
| 1 | Defendant: | nope its their issue and they don't understand that I line |
| 2 | | up everything so 1issue is a domino effect. |
| 3 | Defendant's Friend: | Well with NYE being today it's prob more safe if u |
| 4 | | leave tomorrow. |
| 5 | Defendant: | I cant I wont make it. So its gonna be till next week. |
| 6 | | Cause they dropped the ball. Again. I swear I cant wait |
| 7 | | to [Defendant's son] is a few years older. Ill send him |
| 8 | | out there. I wont deal with this. They waiting till last |
| 9 | | min |
| 10 | | [. . .] |
| 11 | Defendant: | Got it, but Im leave tomorrow. |
| 12 | Defendant's Friend: | ok girl. Glad you got it !!! |
| 13 | **January 1, 2023** – | |
| 14 | Defendant: | I'm gonna leave sunny with the money for the rent |
| 15 | | tomorrow when you get here can you go pay it for me |
| 16 | | please? I'm gonna takeoff because he's losing his mind. |
| 17 | | He's super [f…ing] [p…sed]. |
| 18 | Defendant's Friend: | yes no problem |
| 19 | Defendant: | left $2320 |
| 20 | Defendant's Friend: | drive safe [f…] those mfs |
| 21 | Defendant: | He is mad, looks like all niters. But ill get it done. Im |
| 22 | | going to have the send you the money through Ari in |
| 23 | | Walmart. It's an international money service they all |
| 24 | | they gotta say medical emergency. Works just like |
| 25 | | Western Union or MoneyGram. |
| 26 | Defendant's Friend: | holy [c…] that's a lot of driving be safe. |
| 27 | Defendant: | but were not flagged I will. Ill be fine. Ill have my |
| 28 | | glasses ill be fine. Ill just dress warm. |

| | | |
|---|---|---|
| Defendant's Friend: | Ok sounds good I'll go get it tomorrow or whenever it's ready | |

**January 2, 2023** –

| | |
|---|---|
| Defendant: | someone is going to cash app her $1400 when you get it I want you to sell it to me. |
| Defendant's Friend: | ok ill send it once it comes through. |

[. . .]

| | |
|---|---|
| Defendant: | in Tusla |
| Defendant's Friend: | That's what I like to hear!!!! |

In addition to the warrant for the Solano's phone, ATF-Phoenix obtained a warrant for the historical cellular site data for Solano's phone. The data was consistent with Solano's travel from Phoenix to Illinois during this time frame.

The search of the phone that Defendant claimed was her son's provided much more evidence of her activities before her arrest on January 3, 2023. A brief synopsis of the evidence obtained from his phone included:

- Photographs of firearms;
- Photographs of Toronto police vehicles and Toronto police at crime scenes;
- Picture of Scarborough (Ontario) Shooting Stars;
- Screenshot of Google search for time in Toronto on January 3, 2023, at 2:37 PM;
- Photographs of the six individuals arrested during Canadian "Project Barbell" investigation;[3]
- Screenshot of a Canadian Dollar to United States Dollar conversion;
- Firearm sized items wrapped in bubble wrap in a plastic bin;
- Firearm sized items wrapped in Christmas wrapping paper; and

---

[3] Project Barbell is the name of the TPS investigation which led to the seizures in May 2022.

1      -   Numerous videos depicting firearms.

2          The videos depicting firearms contained strong evidence of the Defendant's

3  connection to the firearms seized in the Tahoe.  In the videos, the hands and legs of a

4  woman are captured handling the guns with additional firearms in the background (pictured

5  below).  The female is wearing gloves, has tattoos on her legs, and speaks throughout many

6  of the videos.  In one video, she states, "some of these [b….es] have switches," an obvious

7  reference to the conversion device seized on January 3, 2023.  In another video, she

8  references "her people's" involvement in her activity and describes the steps she takes to

9  make the firearms more difficult to track.  Finally, on another video another person is seen

10 in the background wearing gloves.  Based on the agents' familiarity with the Defendant

11 and her son, they believe she's the woman in the video and her minor son is the person in

12 the background.   Additionally, the videos are in good enough quality that the serial

13 numbers on the handguns can be seen.  The agents matched those serial numbers to some

14 of the handguns recovered on January 3. 2023.  The videos were saved to this phone on

15 December 27, 2022.

16 / / /

17 / / /

18 / / /

19 / / /

20 / / /

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /



**Search Warrant at the Defendant's Residence**

On February 21, 2023, ATF executed a federal search warrant for the Defendant's Tempe, Arizona residence. During the search, investigators found numerous items related to the Defendant's criminal activities. Specifically, ATF investigators recovered a high-speed bill counting machine, financial receipts for transactions which have been identified during the ongoing financial investigation, and paper records that included the phone numbers of suspected gun sellers and possible firearm ledgers. They also saw the rug which is pictured in the background of the videos described above.

**Financial Investigation of Defendant**

ATF and Internal Revenue Service investigators reviewed financial records related to the Defendant's receipt of funds from suspected Canadian-based associates. Through reviewing the financial records, investigators learned that the Defendant received proceeds

from the illegal sale of firearms to purchase additional firearms for the criminal organization. The records revealed the Defendant received the firearm sales proceeds into her Bank of America account or had the proceeds wired to other associates to conceal her involvement in the illegal activity between March 21, 2022 and January 9, 2023. During this time frame, the Defendant was involved in the concealment of no less than $89,997.00 of illicit proceeds.

**Defendant's Post-Arrest Flight**

On April 14, 2023, the Defendant appeared for her initial appearance and arraignment. ECF 12. On April, 27, 2023, the Defendant was released from custody and placed on home Detention. ECF 18, p. 3. In that order, she was prohibited from traveling out of the United States without prior court approval. *Id*. p. 2.

On July 29, 2023, Pretrial Services received an alert notification that the Defendant removed her electronic monitor. ECF 31. Pretrial Services responded to Defendant's residence and were unable to contact her. *Id*.

In November 2023, the Defendant was apprehended in Mexico and deported to the United States.

## II.    PLEA AGREEMENT

The Defendant pleaded guilty to Count 1 (Possession of a Machinegun) and Count 2 (Conspiracy to Commit Money Laundering) of the Information. The parties stipulated that the Defendant's sentence shall not exceed 87 months, that the offense involved more than 25 but less than 99 firearms under U.S.S.G. §2K2.1(b)(1)(B), that the laundered funds involved in the offense was more than $40,000 but less than $95,000, that the Defendant was an average participant, that the Defendant willfully attempted to obstruct or impede the administration of justice with respect to prosecution related to this conviction under U.S.S.G. §3C1.1, and that Defendant's sentences shall be run concurrently. The government also agreed to dismiss Count 1 of the Indictment.

/ / /

/ / /

- 10 -

### III.    PRESENTENCE INVESTIGATION REPORT

The Sentencing Guidelines range is the "starting point and the initial benchmark" for all sentencing proceedings and should be "kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (citations omitted). The Sentencing Guidelines range is not presumed to be reasonable, but instead is only one of the § 3553(a) factors to be considered by the Court. *Id.*

Probation calculates the Defendant's base offense level at 32. (PSR ¶ 23.) Two levels were added because the Defendant was convicted under 18 U.S.C. § 1956 under U.S.S.G. §2S1.1(b)(2)(B).    (PSR ¶ 24.)  Two additional levels were added because the Defendant obstructed justice under U.S.S.G. §3C1.1. (PSR ¶24.)  After these calculations, probation calculates the Defendant's offense level at 36, criminal history category (CHC) I (188 months – 235 months). (PSR ¶ 57.)  The statutory maximum penalty from Count 1 is 120 months. *Id.*  Probation recommends a sentence of 120 months to be followed by three years of supervised release.    (PSR p. 33.)    Probation's recommended sentence requires the Court to reject the plea agreement.

The United States agrees with the calculations in the PSR.  However, the United States requests that the Court accept the plea agreement and sentence the Defendant to 87 months imprisonment.    The government also requests that the Defendant receive three years of supervised release after completing her prison sentence.

### IV.    ANALYSIS OF SENTENCING FACTORS AND RECOMMENDATION

#### A. History and Characteristics of the Defendant

The Defendant is 40 years old. (PSR at 4.)  She does not have any prior arrests or convictions and, therefore, has a total criminal history score of zero. (PSR ¶ 35.) The Defendant's relationship status is unclear from the information obtained by the presentence report writer. (PSR ¶ 44-46.)  Yet it is clear that the Defendant has four minor children. (PSR ¶ 44.)  Her education history is also unclear, but it is believed that she has a high school diploma. (PSR ¶¶ 46, 51 & 52.)  For employment, the Defendant was employed by QuikTrip prior to her involvement in this case. (PSR ¶ 54.)

The Defendant has a back injury which requires treatment and reports that she suffers from anxiety or depression. (PSR ¶¶ 48-49.) The Defendant obtained her medical marijuana card but claims that she has only used the drug five times in two years. (PSR ¶ 50.) She denies drinking alcohol or using any other illicit substances. *Id.*

**B. The Nature and Circumstances of the Offense**

The guns that can be attributed to the Defendant place her at offense level 18, which is increased to offense level 36 after upward adjustments. As discussed above, the Defendant's involvement in this international criminal organization's distribution of guns was significant. Her assistance to the group became clear to ATF after Canadian law enforcement alerted them to the guns recovered in Canada and the guns were traced back to Arizona. The evidence indicates that the Defendant was courier and facilitator working for others within this firearm trafficking organization. Based on this, it's the United States' view that the Defendant was an average participant of this organization.

**C. The Need for Adequate Deterrence**

Title 18, United States Code, Section 3553(a) expressly provides for the court to consider general deterrence in making its sentencing determination. Section 3553(a)(2)(B) states that "[t]he court, in determining the particular sentence to be imposed, shall consider the need for the sentence imposed to afford adequate deterrence to criminal conduct."

Based on the evidence, the Defendant was involved in an international criminal organization which was headed by traffickers in Canada. The Defendant's role appears to have been limited to obtaining and delivering firearms for the organization. She facilitated their activity because she was a United States citizen capable of lawfully obtaining firearms.

Based on the Defendant's role in the organization and her criminal history, the government requests a sentence below the final adjusted guidelines and below the sentencing cap. The government makes this request because after she fled, she admitted her involvement, accepted responsibility, and entered a plea agreement. It's the government's view that an 87-month sentence sends a message to the Defendant and other

firearm traffickers who assist others in the illegal distribution of firearms that they will be held responsible for their involvement in this, that this is a serious offense, and that their involvement with firearm trafficking makes them a danger to the community.

**D. Not Create Unwarranted Disparity Among Defendants**

The Defendant is being held responsible for the illegal activity she was involved in over a one-year period.  She is only one who has been prosecuted in the United States related to this Canadian-based organization's activities.

After balancing the Defendant's lack of criminal history and her role in the offense, the United States respectfully requests an 87-month sentence.  The government also requests three years of supervised release. The requested sentence accounts for the firearms that were seized, her involvement in her receipt of the organization's illicit proceeds, her role in the firearm trafficking organization, and the danger that she represents to the community because of her participation in the instant offense.

**V.    Conclusion**

For the above reasons, the United States respectfully requests an 87-month sentence. The government also requests three years of supervised release.

Respectfully submitted this 21st day of January, 2025.


GARY M. RESTAINO
United States Attorney
District of Arizona

*s/D. Matthew Conti*
D. MATTHEW CONTI
Assistant U.S. Attorney

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of January, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Matthew F. Leathers
*Attorney for the Defendant*

*s/I. Trevizo*
U.S. Attorney's Office